Kenneth Ray CASTLEBERRY,
Appellant,

v.

The STATE of Oklahoma, Appellee.

No. PC–76–850.

Court of Criminal Appeals of Oklahoma.

Feb. 8, 1979.

Paul D. Brunton, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael P. Kane, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Kenneth Ray Castleberry, hereinafter referred to as defendant, was charged in the District Court, Tulsa County, with the crime of Murder in cases numbered CRF–72–359, CRF–72–360 and CRF–72–361. All cases were consolidated and tried before a jury, and on March 22, 1973, the jury returned a verdict of guilty as charged and punishment was assessed at three (3) concurrent life sentences. From said judgment and sentence the defendant has perfected a timely appeal to this Court. The conviction was affirmed on April 18, 1974, and Petition for Rehearing was denied. The defendant subsequently appealed to the United States Supreme Court, which denied certiorari. *Castleberry v. Oklahoma,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). The defendant filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C., § 2254, in the United States District Court for the Northern District of Oklahoma. Said petition was ultimately dismissed for want of exhaustion of state remedies, and on the 23rd day of June, 1976, the defendant filed his Application for Post-Conviction Relief before the Honorable Jay Dalton, District Judge for Tulsa County, seeking relief under the Post-Conviction Procedure Act. On October 18, 1976, the trial court made certain findings of fact and conclusions of law and denied post-conviction relief. The defendant appeals. For purposes of brevity, reference should be made to *Castleberry v. State,* Okl.Cr., 522 P.2d 257 (1974), for a review of the facts adduced at trial.

The defendant's first assignment of error essentially contends that the trial court, after the evidentiary hearing on the defendant's application for post-conviction relief, erred in its findings of fact and conclusions of law concerning the prosecution's failure to produce evidence favorable to him after a proper request. More specifically, the defendant contends that the trial court misapplied the constitutional mandate of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when the trial court made the following findings of fact and conclusions of law, to-wit:

"2. The defendant contends in his Application for Post-Conviction Relief that the judgment of conviction and sentence in each of the above styled and numbered causes should be vacated for the following reasons:

"(a) That he was denied the right of a proper full appeal through no fault of his own because his attorneys in their appellate brief did not adequately raise the question relative to the constitutional

mandate required by *Brady v. Maryland*, and consequently, the appellate court did not deal with this question;

"(b) The prosecution's failure to produce evidence favorable to the accused, after a proper request by Motion therefore, violated petitioner's right to due process of law guaranteed him by Article II, Section 7 of the Oklahoma Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution; and

\*　　\*　　\*　　\*　　\*　　\*

"3. During the evening hours of February 16, 1972, Michael Roger Lee Cozart gave a statement to Detective Arley Owens of the Tulsa Police Department concerning the activities of Jackie Dean Tandy on February 16, 1972;

"4. The testimony of Michael Roger Lee Cozart given at the Motion for New Trial was perjurious, and therefore not credible; this finding is based upon observation of the witness' demeanor at the time he testified, inconsistencies contained within the testimony, the obvious hostility of Mr. Cozart towards Jackie Dean Tandy, and the lack of corroboration of that testimony;

"5. The information concerning the activities of Jackie Dean Tandy related by Mr. Cozart to Detective Arley Owens on February 16, 1972, is truthfully and accurately reflected within the testimony of Arley Owens, and that information is corroborated by numerous other witnesses;

"6. During the evening hours of February 16, 1972, Michael Roger Lee Cozart did not give a statement to any member of the Tulsa Police Department which in any way indicated that he had observed blood on or about the clothing or person of Jackie Dean Tandy during the evening hours of February 16, 1972;

"7. Michael Roger Lee Cozart did not observe blood on or about the clothing or person of Jackie Dean Tandy during the evening hours of February 16, 1972, and his testimony to that effect was perjurious;

"8. The testimony of Jimmy Lee Mize given at the Motion for New Trial was perjurious, and therefore not credible; this finding is based upon observation of the witness' demeanor at the time he testified, a total lack of corroboration of said testimony, conflicts with the testimony of James Martin Mize, and credible testimony by numerous other witnesses which indicated Jackie Dean Tandy was somewhere else at the time Jimmy Mize purportedly saw him;

"9. Jimmy Lee Mize was not present at the Tandy-Bowdler residence during the morning hours of February 16, 1972, and consequently could not have observed anything regarding Jackie Dean Tandy about which he testified to at the Motion for New Trial;

"10. The testimony of James Martin Mize given at the Motion for New Trial was perjurious, and therefore not credible; this finding is based upon observation of the witness' demeanor at the time he testified, a total lack of corroboration of said testimony, conflicts with the testimony of Jimmy Lee Mize, and credible testimony from numerous other witnesses which totally impeaches the testimony of James Martin Mize, and which indicates that Jackie Dean Tandy was somewhere else at the time James Mize purportedly saw and talked to him;

"11. James Martin Mize was not present at the Tandy-Bowdler residence at any time on the 16th or 17th days of February, 1972, and consequently could not have observed anything regarding Jackie Dean Tandy about which he testified to at the Motion for New Trial, nor could he have had any conversation with Jackie Dean Tandy on the 16th day of February, 1972;

"12. Jackie Dean Tandy was at work during the morning hours of February 16, 1972, from approximately 7:30 a. m. until approximately 1:30 p. m., as was corroborated by the testimony of numerous other witnesses;

"13. Jackie Dean Tandy was investigated as a suspect in the deaths of Marie Castleberry, Brenda Castleberry, and Richard Castleberry, but he was arrested without probable cause;

"14. Members of the Tulsa Police Department removed a knife from the Tandy-Bowdler residence during the evening hours of February 16, 1972, along with a jacket and pair of boots, and all of these items together with the clothing worn by Jackie Dean Tandy during the morning, afternoon and evening hours of February 16, 1972, plus fingernail scrapings from Jackie Dean Tandy on the evening hours of February 16, 1972, were sent to the Oklahoma State Bureau of Investigation and analyzed for the presence of blood, which analyses were negative for the presence of blood in regard to all items;

"15. There is no credible, material evidence to indicate that Jackie Dean Tandy was in anyway involved in the deaths of Marie Castleberry, Brenda Castleberry, or Richard Castleberry which occurred on February 16, 1972;

"16. The State of Oklahoma was not in possession of any evidence prior to trial or during the course of the trial which indicated that Jackie Dean Tandy was involved in the deaths of Marie Castleberry, Brenda Castleberry, or Richard Castleberry; this finding is based upon all the testimony presented during these proceedings and Exhibit 'C'—Affidavit of F. L. Dunn, III;

"17. The investigation of Jackie Dean Tandy as a suspect in the homicides of Marie Castleberry, Brenda Castleberry, and Richard Castleberry was a fruitless investigation which led to a dead-end and thus did not constitute evidence which would fall within the constitutional mandate of *Brady v. Maryland*;

"18. The State of Oklahoma was not in possession of any exculpatory evidence prior to trial or during the course of the trial which was material to the guilt or punishment of the defendant, Kenneth Ray Castleberry;

*     *     *     *     *     *

"23. There was no specific demand made by the defendant or his attorneys prior to trial or during the course of the trial for the disclosure of any particular evidence known by the State prior to trial or during the course of the trial.

*     *     *     *     *     *

"Based upon the above and foregoing findings of fact, the Court makes the following conclusions of law:

"1. The evidence presented by the defense during the Motion for New Trial was not material to the issues of guilt, innocence, or punishment of the defendant, Kenneth Ray Castleberry;

"2. There is no reasonable probability that the results of the jury trial would have changed if the testimony adduced at the Motion for New Trial, or during the hearing on defendant's Application for Post-Conviction Relief, had been introduced at the trial;

"3. Because, prior to trial and during the course of the trial, the State was not in possession of any exculpatory evidence which was material to the guilt, innocence, or punishment of Kenneth Ray Castleberry, there was no issue as to whether the State violated the defendant's rights guaranteed to him by the Constitution of the State of Oklahoma or the United States Constitution as mandated the case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963);

"4. Assuming that the State, prior to trial or during the course of the trial, had been in possession of the evidence which the defendant complains should have been disclosed to him, that evidence when evaluated within the context of the entire record of the proceedings in the cases of the *State of Oklahoma v. Kenneth Ray Castleberry* does not create a reasonable doubt as to the guilt of the defendant; the Court also notes that due to the inconsistencies inherent within the complained of testimony, the lack of corroboration thereof, and the bias and prejudice exhibited by several of the defendant's witnesses, and the impeaching testimony given by credible witnesses, the same does not raise a scintilla of evidence that Jackie Dean Tandy was involved in the commission of the murders;" (Emphasis original)

Although the issue of suppression of exculpatory evidence was first raised on direct appeal and would ordinarily be barred from reconsideration by the rule of res judicata—*Harrell v. State,* Okl.Cr., 493 P.2d 461 (1972)—it is our opinion that the question was inadequately raised, and justice requires full consideration herein.

The defendant predicates his assertion of error upon the testimony of Michael Cozart during the hearing on the defendant's motion for new trial wherein Cozart testified that he gave information to the Tulsa Police Department on February 16, 1972, which implicated Jackie Dean Tandy in the commission of the crimes charged. No police report was made available to the defendant upon his general and nonspecific request for exculpatory evidence.

To sustain his burden of proof, the defendant must show that there has been a violation of the mandate of *Brady v. Maryland, supra,* which holds that the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is *material* to guilt or to punishment and without regard to the good or bad faith of the prosecutor.

In the recent case of *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court considered the proper constitutional standard of materiality when an accused makes a general and nonspecific request for exculpatory evidence and there was a prosecutorial omission, and held as follows, to-wit:

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."

The Supreme Court went on to hold as follows, to-wit:

"Since the arrest record was not requested and did not even arguably give rise to any inference of perjury, since after considering it in the context of the entire record the trial judge remained convinced of respondent's guilt beyond a reasonable doubt, and since we are satisfied that his firsthand appraisal of the record was thorough and entirely reasonable, we hold that the prosecutor's failure to tender Sewell's record to the defense did not deprive respondent of a fair trial as guaranteed by the Due Process Clause of the Fifth Amendment."

It is therefore apparent that the trial court did not err in applying a "reasonable doubt" standard to the materiality of the evidence presented at the evidentiary hearing and the hearing on the motion for new trial.

We next must consider whether there was any exculpatory evidence in the possession of the prosecution prior to or during trial which was material to the guilt or punishment of the defendant under the mandate of *Brady,* as explained in *United States v. Agurs, supra.* To make this determination, it is necessary to examine the testimony presented at the hearing on the motion for new trial and the evidentiary hearing.

Michael Cozart testified at the hearing on the motion for new trial that he saw Jackie Dean Tandy on the evening of February 16, 1972, near the home of Larry Lowther in the Castleberry neighborhood and that Tandy had spots of what appeared to be blood on his shoes. Cozart further stated that he talked to the police later that evening and he believed his statement was written down. However, he did not remember what he told the police. He also related that he disliked Tandy.

During the evidentiary hearing, Tulsa Police Officer Arlie Owens testified that he interviewed Cozart during a neighborhood canvas on the evening of the 16th and that Cozart did not tell him that he had seen blood on Tandy's clothing or that Tandy appeared nervous. Chief Harry Stege then testified that he checked all written reports and found only the one of Cozart's interview by Owens. There was no written statement by either Cozart or Lowther. Therefore, the evidentiary hearing supports a finding that Cozart did not tell the police about Tandy having blood on his shoes or that Tandy acted strangely. The prosecution could not suppress information which it did not have. It should also be noted that it was stipulated during the new trial hearing that Tandy's clothing and boots were scientifically tested, and there was no evidence of blood on any item.

At the hearing on the motion for new trial, Larry Lowther testified that he was with Cozart on the evening of the 16th when he saw Tandy and told him about the killings. At that time Lowther noted a spot on the knee of Tandy's pants that he thought was blood. He also saw what appeared to be the handle of a knife in Tandy's boot. Lowther further stated that he saw no police officers at his home, but called the police because he thought Tandy had committed the killings.

At the evidentiary hearing, Officer Owens stated that he did not take the statement of Larry Lowther. It was further revealed that calls to the Police Communications Department were taped but that the tapes were reused every 24 hours. Again, the evidentiary hearing supports the finding that there was no suppression of constitutionally material evidence concerning statements made by Lowther about Tandy.

At the hearing on the motion for new trial, Joyce Anglen, mother of Larry Lowther and who lived next door to Tandy, testified that she got home about 6:00 p. m. on the 16th and found Tandy using her telephone. He appeared nervous and upset but she noticed nothing unusual about his clothing. She told her husband to "call the law." The next day she talked to police and helped Tandy's wife look for a missing knife.

At the evidentiary hearing, Officer Owens revealed that he helped search the Tandy home, with Tandy's permission, on the night of the 16th, and that a knife was taken from the sink. It was later tested and no blood was found. For reasons set out hereinafter, it can be reasonably assumed that the missing knife was the one taken and tested by the police. The evidentiary hearing revealed no report of Mr. Anglen's call. Again, we find no suppression of material exculpatory evidence.

At the hearing on the motion for new trial, Jimmy Lee Mize testified that he saw Tandy between January and March of 1972 at Tandy's ex-wife's home, and that Tandy appeared rundown and tired and had blood on his clothes and shoes. Tandy left the house with Jimmy's father, James Martin Mize. The elder Mize then testified that he was living with Tandy and his wife, Carolyn Bowdler, on February 16, 1972. About noon Tandy arrived with blood all over his clothing. Mize later changed his testimony to the effect that Tandy returned late that night with blood on his clothing. Mize further testified that at about 8:00 a. m. on the 16th, he took Tandy to work at a car lot owned by Walter Moore and that he, Tandy and Moore bought liquor around 10:00 a. m. and drank it together.

At the hearing on the motion for new trial, Jackie Dean Tandy testified that on the 16th he was living with Carolyn Bowdler and was working for a Pete Skidmore, hauling wood and brush with Michael Cozart and Larry Lowther. On the 16th he arose at 7:00 a. m. and went to work. That night he was arrested at his house while talking to his wife on the telephone. He further testified that James Mize was not at his residence on the 16th and that he moved in for a few days a week or two later. On cross-examination, he related that he and James Mize had previously been involved in a burglary and that he informed the police about Mize's involvement. He further stated that he gave the police per-

mission to search his house and that he gave a statement concerning his whereabouts on the 16th to a detective who transcribed the statement.

During the hearing on the motion for new trial, numerous other witnesses, including Pete Skidmore, were called to establish that Tandy was at work delivering wood on the morning of the 16th instead of in the company of James Martin Mize.

During the evidentiary hearing, Carolyn Bowdler Johnson testified that she and Tandy were living together in February of 1972 and that when she went to bed during the early morning hours of the 16th, Tandy was still there when she awoke. He went to work around 7:00 a. m. She further stated that Tandy was arrested on the night of the 16th; that he did not carry a knife in his boot; and that both of her knives were in the kitchen on the morning of the 16th, although one was missing on the 17th. She then identified the knife which the police took during the search of her home as being the missing knife which she had in the peanut butter on the morning of the 16th. She further related that James Martin Mize was not living in the house on the 16th and that he moved in some three weeks later. During the new trial hearing, Walter Moore testified that he was in the Tulsa County jail on the 16th and did not see Tandy or James Martin Mize on that date. He purchased the car lot sometime after the Castleberry family was killed.

■ It is therefore apparent from the above summary of the evidence that the trial court did not abuse its sound discretion in finding that the testimony of the elder Mize and his son was not credible. In fact, a thorough reading of their testimony discloses incoherent and confused statements which do not even corroborate each other. There was no credible evidence to indicate that Tandy was in any way involved in the killings, and the police investigation was a fruitless dead end. Therefore, there could be no suppression of constitutionally material evidence under *Brady, supra,* and *Agurs, supra.*

After considering the entire record and after conducting the hearing on the motion for new trial and the evidentiary hearing and after observing the witnesses at first hand, the trial court remained convinced of the defendant's guilt beyond a reasonable doubt. The trial court's findings were reasonable and proper under the circumstances, and the defendant's first assignment of error is without merit.

The defendant's other assignment of error asserts that this Court erred in holding that a confession of the defendant was admissible as supported by sufficient evidence that the defendant knowingly and intelligently waived his right to remain silent and understood the consequences of said waiver and subsequent confession.

■ We need only note that this issue was fully considered on direct appeal. *Castleberry v. State, supra.* The determination by this Court that the defendant had been properly advised of his rights before giving his statement is res judicata and bars the same claim from being raised on an application for post-conviction relief. Title 22 O.S.1971, § 1086. See also *Grimes v. State,* Okl.Cr., 512 P.2d 231 (1973), and *Harrell v. State, supra.* The defendant's second assignment of error is also without merit.

Both the defendant and the State must be commended for their diligent efforts during the preparation, trial and appeal of this case. The briefs were cogent, extensive and relevant to the issues raised. The defendant was represented by able and conscientious counsel who are a credit to the profession and the citizens of this State. However, a thorough examination of the lengthy record and the briefs requires that the order of the trial court denying post-conviction relief be, and the same is, hereby, *AFFIRMED.*

CORNISH, P. J., concurs.

BRETT, J., dissents.