Charles Troy COLEMAN, Petitioner–Appellant,

v.

James L. SAFFLE, Warden, Oklahoma State Penitentiary, McAlester, Oklahoma, Respondent–Appellee.

No. 90–7043.

United States Court of Appeals, Tenth Circuit.

Aug. 28, 1990.

As Amended Sept. 4, 1990.

Certiorari Denied Sept. 9, 1990.

See 111 S.Ct. 22.

Mandy Welch, Deputy Appellate Public Defender, Norman, Okl., for petitioner-appellant.

Robert A. Nance, Asst. Atty. Gen., Oklahoma City, Okl. (Robert H. Henry, Atty. Gen. of Oklahoma, and Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, Okl., were with him on the brief), for respondent-appellee.

Before HOLLOWAY, Chief Judge, and MOORE and TACHA, Circuit Judges.

PER CURIAM.

Charles Troy Coleman, petitioner-appellant, was convicted of first degree murder and sentenced to death by an Oklahoma jury in 1979. He appeals from the district court's denial of his third petition for federal habeas relief and his motions for an evidentiary hearing and stay of execution. Petitioner also seeks a certificate of probable cause from this court, and a stay of his execution scheduled September 10, 1990.

The issues on appeal are (1) whether petitioner was deprived of a constitutionally adequate determination of his competency to stand trial because the state trial court did not *sua sponte* conduct an evidentiary hearing or make an independent judicial determination of petitioner's competency; (2) whether petitioner was deprived of

his right to a fair and reliable sentencing determination because the state hospital that performed the competency evaluation did not disclose petitioner's medical records to his counsel or to the court, which records might have been used as mitigating evidence at the sentencing stage of his trial; (3) whether petitioner was denied effective assistance of counsel; (4) whether petitioner's failure to raise these issues in his prior habeas petitions constitutes an abuse of the writ; and (5) whether the district court erred in not granting petitioner an evidentiary hearing.

## I

The factual and procedural histories of this case are adequately set out in our earlier opinions affirming denial of petitioner's first and second petitions for habeas relief. *See Coleman v. Saffle*, 869 F.2d 1377 (10th Cir.1989) (*Coleman II*), *cert. denied*, — U.S. —, 110 S.Ct. 1835, 108 L.Ed.2d 964 (1990); *Coleman v. Brown*, 802 F.2d 1227 (10th Cir.1986) (*Coleman I*), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987). We repeat only those facts necessary to our resolution of this appeal.

Petitioner was tried and convicted in the district court of Cherokee County, Oklahoma, following a change of venue from Muskogee County for the trial. Approximately six months before trial, petitioner's trial attorney filed a motion requesting a court-ordered evaluation of Coleman's sanity. III R. at 187. After a brief hearing on the motion, Associate District Judge Burris entered an order finding that "a doubt has arisen [as] to the present sanity of the defendant," and ordering Coleman's commitment to Eastern State Hospital "for observation and examination for a period not to exceed sixty (60) days." III R. at 187. Petitioner was admitted to Eastern State Hospital on March 12, 1979, and released approximately one month later on April 10, 1979. On April 6, 1979, the Director and Chief Forensic Psychiatrist of Eastern State Hospital, Dr. R.D. Garcia, wrote a single page letter (erroneously dated March 6, 1979) to Judge Burris advising the court

that it was the opinion of the hospital staff that petitioner was competent to stand trial. *Id.* Dr. Garcia's letter states that Coleman "does have sufficient ability to consult with an attorney and he does have a rational as well as actual understanding of the proceedings." *Id.*

We are referred to no indication in the record that petitioner's competency to stand trial was questioned by his attorney or the trial court at any other time during the trial proceedings. *Cf., e.g.,* VII R. at 40. Petitioner's conviction and death sentence were affirmed by the Oklahoma Court of Criminal Appeals. *Coleman v. State*, 668 P.2d 1126 (Okla.Crim.App.1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984). Petitioner then filed an application for post-conviction relief in state district court. That court denied the application in an unpublished order and the Oklahoma Court of Criminal Appeals affirmed. *Coleman v. State*, 693 P.2d 4 (Okla.Crim.App.1984).

After this court affirmed the denial of Coleman's first habeas petition, *see Coleman I*, 802 F.2d 1227, but before this court heard argument on Coleman's second petition for federal habeas relief, petitioner's attorney, on or about August 21, 1987, obtained for the first time Eastern State Hospital's records of its 1979 court-ordered examination of petitioner. On September 23, 1987, petitioner, acting through his present attorney, filed a motion to remand the *Coleman II* habeas appeal then pending in this court to the federal district court in order to raise new claims based upon the newly discovered medical records. *See* Motion to Remand to District Court in No. 87–2011 (filed Sept. 23, 1987). Petitioner also requested that this court instruct the federal district court to hold the proceedings in abeyance pending exhaustion in state court of the new claims, and that petitioner be permitted to amend his habeas petition after exhaustion of state remedies.

The pending appeal in *Coleman II* was argued and submitted to this court on October 2, 1987. We took the motion for remand under advisement. By letter dated

October 25, 1987, petitioner's attorney advised this court that petitioner had initiated state post-conviction proceedings in which he raised the claims predicated on the newly discovered evidence. Having been advised that the state post-conviction proceedings were in progress, this court proceeded to file its opinion on March 6, 1989, affirming the denial of habeas relief; we denied petitioner's motion to remand as moot on April 11, 1989.

The state district court conducted an evidentiary hearing on the new claims based on the medical issues, asserted in petitioner's third application for post-conviction relief, on December 17 and 18, 1987, and January 22, 1988.[1] The state district court denied relief in an unpublished order which was affirmed by the Oklahoma Court of Criminal Appeals in an unpublished decision.[2] The Supreme Court denied certiorari. *Coleman v. Oklahoma,* —— U.S. ——, 110 S.Ct. 208, 107 L.Ed.2d 162 (1989).

A fourth application for post-conviction relief was filed in the district court of Muskogee County, attacking the reliability of Dr. Garcia's determination of Coleman's competency to stand trial on the ground that Dr. Garcia's own alleged mental illness distorted his interpretation of data and impaired his diagnostic judgment. The state district court denied relief without a hearing, and the Oklahoma Court of Criminal Appeals affirmed that decision without requesting briefing by the parties.[3] The Supreme Court denied Coleman's petition for certiorari on that matter on June 11, 1990. —— U.S. ——, 110 S.Ct. 2633, 110 L.Ed.2d 652 (1990).

After having exhausted his state court remedies, Coleman filed his third petition for federal habeas relief in the Eastern District of Oklahoma on June 18, 1990.

The court denied relief in an unpublished order on July 11, 1990, and this appeal followed.

II

■ A primary issue on this appeal is whether the medical evidence in question which was in records of Eastern State Hospital at Vinita, Oklahoma, was "material" under the opinions of the Supreme Court so that its disclosure was required as exculpatory evidence for the defendant. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 1001–02, 94 L.Ed.2d 40 (1986); *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985) (Opinion of Blackmun, J.); *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

As noted, petitioner's state trial attorney applied for commitment of petitioner for a mental examination, this was ordered by a state associate district judge, and a letter from the state hospital's chief forensic psychiatrist reported that the staff concluded petitioner had sufficient ability to consult with an attorney and that he had a rational and actual understanding of the proceedings against him. However, the detailed medical evaluations and records concerning petitioner were not sent to the judge or counsel. A copy of Dr. Garcia's letter was sent to the District Attorney, who then furnished a copy to petitioner's trial counsel, Mr. Pearson.

The additional medical evidence included admitting notations, recorded by Dr. Garcia on March 13, that diagnosis was "Deferred.... DIAGNOSTIC IMPRESSION: R/O [rule out] Depressive reaction, situa-

---

1. The transcript of that hearing was before the federal district court and has been designated as Volume VII of the record on appeal herein.

2. We append to this opinion the unpublished opinion of the Oklahoma Court of Criminal Appeals affirming the denial of post-conviction relief filed on April 6, 1989, which opinion also reproduces in full the findings of fact and conclusions of law of the Oklahoma District Court rejecting those claims. *See* Appendix A hereto.

3. The unpublished orders of the state district court denying the fourth state post-conviction petition are appended hereto as Appendix B. We also append the unpublished order of the Oklahoma Court of Criminal Appeals affirming that denial of post-conviction relief as Appendix C.

tional. (Retain) Schizophrenia, chronic undifferentiated type in partial remission, if not complete." III R. at 197. That early notation also stated "He may be considered competent in a psychiatric and legal point of view at this point but questionable." On March 14 a psychological evaluation was done by Dr. Quijano, a clinical psychologist, and Dr. McGuffey, a psychologist, both members of the hospital staff. Their observations, made some two days after petitioner's admission, included a statement that "[Coleman] seemed to have an adequate understanding of courtroom procedures. When asked if he felt he was mentally competent, Charles stated he thought so and did not feel like he needed to be in a mental hospital; however, he noted 'People have different ideals [sic] about mental problems.' Charles is not considered competent to stand trial at this time due to the apparent underlying schizophrenic thinking with a predominance of paranoid projections." III R. at 199.

The testimony at the state court 1987 post-conviction hearing included that of Dr. Quijano, and defendant's murder trial attorney, Mr. Pearson, and several other witnesses. It was noted by Dr. Quijano that the staff had a bias in favor of finding the petitioner incompetent to stand trial and that this was a reason for keeping him for observation for approximately a month, instead of the customary two weeks' period. Dr. Quijano testified that "the staff struggled with this [Mr. Coleman's competency] because ... you have Charles Coleman reporting symptoms which are not overtly verified." VII R. at 202. On March 27, 1979, a further psychological evaluation was made in the records by Dr. Quijano and Dr. McGuffey and they noted that the results of their investigation would "tend to suggest intellectual deterioration in relation to psychogenic factors rather than organic impairment. Considering Charles' past history of reported seizure activity, would tend to indicate an underlying organic brain syndrome. In addition, however, there are indications of an underlying chronic schizophrenic process which appears to be in partial remission at this time." This March 27 evaluation was con-

cerned primarily with suspected organic mental impairment. The evaluation stated: "WAIS. Charles obtained a Verbal IQ of 72, a Performance IQ of 64, and a Full Scale IQ of 66, suggesting that he is presently functioning in the range of mild to borderline mental retardation." III R. at 200. We must agree that such evidence was relevant and admissible, if it had been available and had been offered for petitioner at the penalty stage. *Penry v. Lynaugh*, —— U.S. ——, 109 S.Ct. 2934, 2949, 106 L.Ed.2d 256 (1989).

The final detailed medical record made at the hospital was a Discharge Summary, apparently made on the release date of April 10, 1979. This included a final diagnosis: "Psychiatric: (1) Non-psychotic organic brain syndrome, brain trauma, gross force (age 9), associated with convulsive disorder. (2) Antisocial personality, by history. (3) Malingering." This Discharge Summary was signed by Dr. Garcia and it included a statement: "Potentially dangerous not only to himself but to others as an antisocial individual." It concluded that petitioner was: "Competent in a psychiatric and legal point of view, knowing right from wrong and capable of testifying in his own defense, with actual and factual understanding in the court proceeding."

In his testimony at the 1987 state post-conviction proceeding, Dr. Quijano stated that he was in agreement with the Discharge Summary's diagnosis, paragraphs 1, 2 and 3, as quoted above. However, he "would include retained schizophrenic chronic undifferentiated type in remission." VII R. at 165. Dr. Quijano testified that he did "not recall and the chart does not reflect disagreement among the staff." *Id.*

It is true that the hospital medical records included numerous statements, principally notations made before the staff's final evaluations, which are supportive of arguments now made by the petitioner concerning his mental condition. However, in making an inquiry as to whether evidence was "material" in evaluating a due process claim of alleged nondisclosure of material evidence under *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375,

3384–85, 87 L.Ed.2d 481 (1985) (Opinion of Blackmun, J.), "we must avoid concentrating on the suppressed evidence in isolation. Rather, we must place it in the context of the complete record." *Trujillo v. Sullivan*, 815 F.2d 597, 613 (10th Cir.1987), *cert. denied*, 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 256 (1987).[4]

In this light we must consider the total picture which includes other factors related to the medical records, factors unfavorable to petitioner's position. First, the April 10, 1979, Discharge Summary for the hospital included this statement on petitioner's mental condition: "schizophrenia, chronic undifferentiated type, *in partial remission, if not complete*." (Emphasis added.) Second, the April 10, 1979, Discharge Summary had a concluding statement also that petitioner was "Competent in a psychiatric and legal point of view, knowing right from wrong and capable of testifying in his own defense, with actual and factual understanding in the court proceeding." As mentioned earlier, this view was stated in the April 6, 1979, letter to Judge Burris from the Chief Forensic Psychiatrist at the hospital, Dr. Garcia: "We have completed our evaluation of Mr. Coleman and it is the opinion of our staff that he does have sufficient ability to consult with an attorney and he does have a rational as well as actual understanding of the proceedings against." [sic]. III R. at 508. Significantly, Dr. Garcia's conclusion of competence came at the end of petitioner's hospitalization,[4a] whereas the evaluations expressing doubt as to petitioner's competence to stand trial, or a conclusion of incompetence, were made relatively early in his hospitalization.

Third, the medical records contained some damaging statements of a different sort, unfavorable to petitioner if presented to the jury. The Discharge Summary of April 10, 1979, p. 2, stated: "Potentially dangerous not only to himself but to others as an antisocial individual." The medical records also included an unfavorable much earlier letter of December 7, 1962, concerning petitioner when 15 years of age. This letter stated that petitioner had pulled a gun on an officer when arrested and that his actions on impulse made him "unable to live by the rules of our society" and that he was "dangerous to Charles as a person and to the community." III R. at 305. Such unfavorable evidence from the medical records would have added force to the damaging evidence of petitioner's violent conduct. There was evidence before the jury at trial that petitioner shot and killed both Mr. and Mrs. Seward with a .28 gauge shotgun. *Coleman I*, 802 F.2d at 1231, *cert. denied*, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987). The State had alleged future dangerousness as an aggravating circumstance and it was proper to argue that Coleman constituted a continuing threat to society. *Id.* at 1240. At the sentencing stage, there was also evidence that after his arrest for the Sewards' homicides, petitioner escaped from jail and the next day cut the throat and hand of a police officer and told another inmate in jail he assumed the officer would die; Coleman told the officer, however, after their struggle that he was not going to hurt him. *Coleman II*, 869 F.2d at 1389. Two days later petitioner shot and killed a man in a park in Tulsa, and later kidnapped an Arizona detective, leaving him handcuffed in his car in the desert. *Id.* at 1390. Thus, statements we have noted in the medical records about petitioner's potential dangerousness would have carried damaging implications which the State was arguing in the sentencing phase.

---

**4.** This question whether evidence was "material" under *Ritchie* or *Bagley, inter alia,* is stricter on petitioner, and distinct from the broader test for "any relevant mitigating factor" which the sentencer must be permitted to consider. *Eddings v. Oklahoma*, 455 U.S. 104, 112, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982).

**4a.** We note, however, that Dr. Quijano testified that the staff did not advise Dr. Garcia as to competency or incompetency of Coleman. The staff participated in the sense of supplying Dr. Garcia the data on observation and testing he asked for, but Garcia alone pulled all the information together and made the decision on competency. Until this case, Dr. Quijano had not seen the letters sent to the court. VII R. at 165–166. At no point in his testimony did Dr. Quijano express disagreement with Dr. Garcia's conclusion of competence.

Fourth, we note that the Discharge Summary's final diagnosis included the unfavorable conclusion of "Malingering." Similarly, much earlier notations for December 22, 1962, during petitioner's hospitalization at Eastern State when he was 15 years old, included a statement that "He feigns pain to get attention." III R. at 417.

Fifth, we note that there were five aggravating circumstances found by the jury in petitioner's sentencing phase of trial: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) the defendant knowingly created a risk of death to more than one person; (3) the murder was especially heinous, atrocious or cruel; (4) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (5) the existence of probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. The "especially heinous, atrocious, or cruel" circumstance was held to be applied unconstitutionally in Oklahoma, *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), and must be disregarded. In *Coleman II*, 869 F.2d at 1390, we held that the jury's inclusion of that invalid circumstance in its sentencing determination was harmless error. Nevertheless four valid aggravating circumstances remained which amply supported the death penalty and which must be considered as part of the circumstances here.

In sum, the medical records whose non-disclosure is complained of included several unfavorable statements within those records, as noted above, such as references to petitioner's potential dangerousness to himself and others.[5] Along with these, we must consider the damaging guilt and sentencing stage evidence of petitioner's repeated violent acts. Considered in light of all the circumstances, we must conclude that even if the medical records had been disclosed and used as favorable evidence as to petitioner's mental condition to argue sympathetically for him at the sentencing stage, nevertheless there was no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," and there was no such "probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57, 107 S.Ct. 989, 1001, 94 L.Ed.2d 40 (1986) (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383) (Opinion of Blackmun, J.).[6]

## III

### A.

■ Petitioner further argues that he was deprived of a consitutionally adequate determination of competency because (1) the state trial court did not *sua sponte* conduct an evidentiary hearing on petition-

---

**5.** It is true that Mr. Pearson and Mr. Hayes, respectively Mr. Coleman's attorneys at trial and on direct appeal, both state that the Eastern State Hospital records, if disclosed, would have been useful in the trial, particularly in the sentencing phase. *See* VII R. at 42, 44, 46, 48, 215, 216, 225, 230. The test is not, however, whether petitioner's counsel would have used the evidence which was not disclosed. Rather, the determinative question is whether the evidence is "material" in view of the entire record under the Supreme Court's standard.

While the selective use of the hospital records might have proved useful to defense counsel, the introduction of any portion of the medical records favorable to petitioner would have given the prosecution the opportunity to introduce other portions of these same records which are adverse to petitioner. We are satisfied that the prosecution would have found these other portions of the medical records beneficial to its

case. Mr. Gary Sturm, the District Attorney's chief investigator on the Coleman case, testified that records would have been useful in the sentencing stage of the trial to show aggravating circumstances. VII R. at 279, 283, 284.

**6.** In view of our conclusion that the records were not "material" under the standards of the Supreme Court so that their disclosure was required by due process, we need not, and do not, decide the question whether the state hospital should be considered a part of the prosecution arm of the state so that the disclosure requirements of the *Brady, Ritchie, Bagley* and *Agurs* cases applied.

In this connection we note that a general *Brady v. Maryland* request was made for the production of exculpatory material by petitioner's state trial counsel. Trial Transcript at 22–24. The prosecuting attorney stated that he did not believe there was any such evidence in their possession.

er's competency to stand trial, and (2) the court failed to make an independent judicial determination of petitioner's competency to stand trial. We must disagree.

The parties do not disagree concerning the underlying due process right not to be tried while incompetent,[7] or the legal standard for determining competency to stand trial.[8] The question presented is whether, in light of the information available to the trial court, "the [court's] failure to make further inquiry into petitioner's competence to stand trial denied him a fair trial." *Drope v. Missouri*, 420 U.S. 162, 174–75, 95 S.Ct. 896, 905, 43 L.Ed.2d 103 (1975).

The Oklahoma statutes in effect at the time of petitioner's trial and conviction did not require the trial court to conduct a competency hearing unless the defendant's sanity was in doubt during trial. *Compare* Okla.Stat. tit. 22 §§ 1171–1173 (1971) (repealed 1980) *with id.* §§ 1162–1163.[9] However, state procedures must be adequate to protect a defendant's right not to be tried or convicted while incompetent. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *see also Drope v. Missouri*, 420 U.S. at 172, 95 S.Ct. at 904. Due process requires a trial court to conduct a competency hearing *sua sponte* whenever the "evidence raises a bona fide doubt as to the defendant's competence to stand trial." *Pate*, 383 U.S. at 385, 387, 86 S.Ct. at 842, 843;[10] *see also Drope v. Missouri*, 420 U.S. at 180–81, 95 S.Ct. at 908 (reiterating the *Robinson* due process standard and explicitly recognizing a trial judge's constitutional obligations to resolve competence issues and to be alert before and during trial to evidence suggesting a defendant's possible incompetence).

The Court has acknowledged that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," 420 U.S. at 180, 95 S.Ct. at 908, but has recommended that the factfinder consider "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial" in reaching its decision. *Id.* The Court noted that even one of these factors standing alone may, in some circumstances, be sufficient. *Id.* Information tending to establish the requisite doubt "need not be presented in a formal motion nor argued by defense counsel nor presented to the judge in the form of admissible evidence." *Lokos*

7. *See Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).

8. The Court has applied the following two-part test for determining competency to stand trial: (1) whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) "whether he has a rational as well as a factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam).

9. The trial court was required to commit the defendant to a state hospital for observation and examination for a period not to exceed sixty days whenever it determined (prior to trial) that there was "a doubt as to the present sanity of the [defendant]." Okla.Stat. tit. 22 § 1172. Criminal proceedings are then suspended "pending the report of the doctors...." *Id.* § 1172. If the examining doctors conclude that the individual is "presently sane," then the order of the district court suspending criminal proceedings is dissolved. *Id.* § 1173. *See generally Colbert*

*v. State*, 654 P.2d 624, 627 (Okla.Crim.App.1982) (finding the Oklahoma procedures constitutionally adequate to protect the right of the accused not to be tried while legally incompetent).

In 1980, the Oklahoma statutes were substantially changed, and now require both a competency examination and evidentiary hearing whenever there is any doubt as to the defendant's competency to stand trial. *See* Okla.Stat. tit. 22 §§ 1175.1—1175.8 (1981); *see generally Scott v. State*, 730 P.2d 7 (Okla.Crim.App.1986); *Rowell v. State*, 676 P.2d 268 (Okla.Crim.App. 1984).

10. This standard derives from the Illinois statute at issue in *Robinson*. *See* 383 U.S. at 385, 86 S.Ct. at 842. As the Court noted in *Drope v. Missouri*, 420 U.S. at 172, 95 S.Ct. at 904, the *Robinson* Court did not hold that the procedure prescribed by that statute was constitutionally mandated, although it did hold that the statutory procedure, if followed, was constitutionally adequate. In *Drope*, the court framed the question as whether the information available to the trial court created a "sufficient doubt of [petitioner's] competence to stand trial to require further inquiry on the question." *Id.* at 180, 95 S.Ct. at 908. ·

*v. Capps*, 625 F.2d 1258, 1260 (5th Cir. 1980); *accord Demos v. Johnson*, 835 F.2d 840, 843 (11th Cir.), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988).

We have carefully reviewed the record, and conclude that there was insufficient evidence before the trial judge to mandate an evidentiary hearing on petitioner's competency to stand trial.[11]

The matters before the court included: the information before the judge prior to the commitment, *see* note 12, including defense counsel's oral argument in support of his motion for a psychiatric examination, with reference to existing medical records from the State of California and to petitioner's complaints of seizures and headaches.[12] After the examination the court had Dr. Garcia's letter of April 6, 1979, in which he reported that the staff had concluded that petitioner was competent to stand trial.

These circumstances are similar to those in *United States v. Crews*, 781 F.2d 826, 833 (10th Cir.1986).[13] There, the trial court ordered a psychiatric examination, on the government's motion, but did not hold an evidentiary hearing or make an express finding of competency. Instead, the court relied solely on two psychiatrists' conclusions that the defendant was competent to stand trial and ordered the defendant to stand trial. The defendant challenged the district court's failure to hold a competency hearing pursuant to his request under 18 U.S.C. § 4244 (now 18 U.S.C. § 4241), and the court's failure to make a finding of competency before assigning the case for trial.

This court held that the trial court did not err in failing to hold an evidentiary hearing. 781 F.2d at 833. "[A] trial court need not conduct a competency hearing when there has been only minimal or no evidence of incompetence." *Id.* (citing cases). The court held that "[t]o raise a

**11.** We note that it was Judge Burris who heard the motion for the mental examination and ordered the hospitalization. Judge Summers tried the murder case of petitioner, but became a Justice of the Oklahoma Supreme Court on February 1, 1985, before the 1987 hearing on the third state post-conviction proceeding. Judge Burris again conducted that hearing and made findings and conclusions thereon and denied the application.

**12.** The judge said at the beginning of the hearing that, with defense counsel Pearson having stated to the court that in his opinion the defendant should be examined for the reason counsel could not consult with petitioner nor communicate properly to prepare his case, the application would be granted. Transcript of Proceedings in District Court, March 9, 1979, at 4. At that point, defense counsel stated:

> [I]t's been called to my attention through some medical records that were submitted to me from the State of California that there has been a history of seizures that the defendant has suffered since—oh, for a lot of years, and there is psychiatric statements to back up that in the State of California which I have just read here recently, and in view of that and in view of the fact that the defendant has been complaining down at the local jail about having seizures and about having headaches, I am under the impression that it certainly would be wise to have the examination made at this time.

*Id.,* at 4–5. Petitioner was questioned by his attorney and stated he had requested counsel to

send him to the state hospital and that he (petitioner) requested the court to send him to the hospital for observation. *Id.* at 12–13.

The medical records to which counsel alluded were never submitted to the court or otherwise made a part of the record. The record does indicate that Mr. Pearson forwarded some materials to Eastern State Hospital, but it is not clear whether those materials included the California medical records. *Cf.* Transcript of 1987 Post–Conviction Hearing at 52–53.

With respect to the reference to counsel's difficulty in communicating with petitioner, we note that there is no later statement to such effect *after* the commitment and that counsel testified at the 1987 post-conviction hearing that he had no problem of communication. VII R. at 48.

**13.** Although *Crews* was a direct criminal appeal construing a federal trial court's obligations under the controlling federal statute, *see* 18 U.S.C. § 4244 (now codified at 18 U.S.C. § 4241), we do not believe it should be distinguished on that basis. The principles announced in *Crews* are sound and, we believe, applicable to our habeas review of analogous state court procedures with the constitutional requirements in mind. *See de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir.1976) (en banc), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977), citing *Robinson* and *Drope* in connection with stating the test for an evidentiary hearing as quoted in *Crews*, 781 F.2d at 833.

substantial question requiring a competency hearing there must be some evidence to create doubt on the issue. Merely raising the issue is insufficient." *Id.* The court concluded as follows:

> The only evidence presented to the court before the trial in this case was that defendant was a hospitalized mental patient at the time of the alleged crime and that he suffered from the mental illnesses recited in the reports of Drs. Merrell and Logan. *In light of the psychiatrists' conclusions that the defendant was competent to stand trial, however, we cannot say the trial court erred in failing to hold an evidentiary hearing.*

*Id.* (Emphasis added.)

According to *Crews,* "we must determine 'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.' " 781 F.2d at 833 (quoting *de Kaplany v. Enomoto,* 540 F.2d 975, 983 (9th Cir.1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977)). We are persuaded that in light of the information available to the state trial judge here, the state court did not err in failing to hold an evidentiary hearing. After the report back from the hospital, the judge had no real basis for concerns casting doubt on petitioner's competency to stand trial. The petitioner does not point to record evidence at trial of conduct that was unusual or otherwise suggestive of incompetency. Finally, the testimony of petitioner's trial counsel at the 1987 state post-conviction hearing seriously undermines the hypothesis that petitioner was unable to consult with his lawyer or that he failed to appreciate the nature of the proceedings against him.

Dr. Garcia's letter is admittedly conclusory and does not reveal the factual basis for the staff's conclusion or any of the information contained in Coleman's extensive medical records which might have caused the court to doubt petitioner's competency.[14] Nevertheless, in the absence of any contrary evidence or other indicia of incompetence, we are not persuaded that the state court's failure to inquire further into Coleman's competency to stand trial deprived him of due process. As the Court noted in *Drope v. Missouri,* "judges must depend to some extent on counsel to bring issues into focus." 420 U.S. at 176–77, 95 S.Ct. at 906. Petitioner's trial counsel raised no further objections in this regard, and he testified at the 1987 state post-conviction hearing that he spent "a lot of time" with petitioner and had no reason to doubt Mr. Coleman's competency to stand trial, and no reason to further investigate his psychiatric history. *See* VII R. at 44–45, 48, 50, 58, 67.

Petitioner further argues that because the trial court did not hold an evidentiary hearing, its determination of competency was impermissibly based solely on the unsubstantiated conclusions of Dr. Garcia.[15] We disagree. Petitioner's argument is little more than a restatement of his first contention that the trial court should have conducted a more complete inquiry into his competency to stand trial. We have just rejected that argument as well as its underlying premise that the court's competency determination was based on insufficient information. While it is true that the court's determination of competency necessarily depended upon the adequacy of Eastern State Hospital's competency examination, and upon the accuracy and completeness of Dr. Garcia's report to Judge Burris, that fact alone does not undermine the reliability or the independence of the court's ultimate finding of competency.[16] In light of

**14.** The letter does refer to Dr. Garcia's recommendation that petitioner continue to take specified medication, but it does not elaborate.

**15.** The parties do not cite to (and we have not found) an express finding of competency. It is apparent, however, that the trial judge ordered petitioner to trial which, we have held, constitutes an implied finding that he was sufficiently

competent to stand trial. *United States v. Crews,* 781 F.2d at 833.

**16.** Petitioner contends that Dr. Garcia failed to disclose to the court material information in petitioner's medical records which might undermine Dr. Garcia's conclusions. Therefore, petitioner argues that Dr. Garcia's letter to the court was necessarily misleading and the court's re-

the information then available to the trial judge, and in particular the *absence* of any indicia of incompetence, the court was entitled to rely on the conclusions of experts. *See United States v. Crews,* 781 F.2d at 833.

We do not mean to suggest that the trial court should merely accept a psychiatrist's conclusions without meaningful inquiry where there is doubt as to the reliability of those conclusions, or the completeness and forthrightness of the information conveyed to the court. Nor do we deviate from the principle that "[i]n all ... proceedings leading to the execution of an accused, ... the fact-finder must 'have before it all possible relevant information about the individual defendant whose fate it must determine.' " *Ford v. Wainwright,* 477 U.S. 399, 413, 106 S.Ct. 2595, 2603–04, 91 L.Ed.2d 335 (1986) (quoting *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976) (plurality opinion)). However, since there was "minimal or no evidence of incompetence," *Crews,* 781 F.2d at 833, as here, and no evidence undermining the reliability of Dr. Garcia's competency evaluation or conclusions, there was no constitutional error.

In sum, we agree with the state court's conclusion that "the procedures utilized for determining petitioner's competency and ability to assist counsel in 1979 did not, per se, violate the due process clause of the Fourteenth Amendment." *See* App. A at 4.

### B.

■ Finally, we are persuaded that the state court's determination of petitioner's competency to stand trial is "fairly supported by the record," 28 U.S.C. § 2254(d)(8), and is therefore entitled to a presumption of correctness. *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983); *Sumner v.*

*Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981).

The state court findings, quoted in the order of the Oklahoma Court of Criminal Appeals, stated: "7. That the records compiled by Eastern State Hospital together with the testimony of Dr. Walter Quijano, the psychologist who participated in the examinations and evaluation of petitioner in 1979, support the report tendered the court by Dr. Garcia that petitioner was, in fact, able to assist counsel and competent to stand trial." App. A at 4.

We are satisfied that these findings are supported by the record of the state court post-conviction hearing. Petitioner's attorney was asked whether he would have been able, without expert assistance, to understand the medical records and their importance. He replied: "At no time did I ever personally as a lawyer defending Charles Coleman question his competency. That was never brought to my attention, nor did I ever question it." VII R. at 44. The attorney also testified that petitioner gave no response when the attorney told him they needed to be thinking about what to do at the sentencing stage, and that he always asked about what the officers were doing with his pickup truck. *Id.* at 45, 48. Nevertheless, the attorney said: "I didn't have any problem communicating with him." *Id.* at 48. The attorney never observed any seizure or convulsion of petitioner and did not have reason to believe petitioner was not in touch with reality. *Id.* at 55. We note that petitioner's attorney was an experienced criminal lawyer who had participated in several other capital trials. *Coleman I,* 802 F.2d at 1236.

We have also reviewed the testimony of Dr. Pedderson, a psychiatrist, called at the hearing by petitioner. She examined petitioner for 2½ to 3 hours in August 1987 and reviewed his medical records. She testified that the records would raise a doubt

liance on Dr. Garcia's conclusions in that letter failed to protect petitioner's right not to be tried while incompetent.

The flaw in petitioner's argument is that it presupposes either a duty on the part of the examining psychiatrist to disclose the data upon which his or her conclusions are based, or a

duty on the part of the trial court to inquire further into petitioner's competency to stand trial (i.e., hold an evidentiary hearing in these circumstances). Petitioner cites no authority, and we have found none, for the first premise; and we have rejected the second premise above.

as to petitioner's ability to assist his attorney "because of the fact that Mr. Coleman was hearing voices and had psychotic episodes in the past, had a lot of paranoid thinking and similar things." VII R. at 109. Dr. Quijano, the clinical psychologist on the staff that observed petitioner during the 1979 hospitalization, agreed with Dr. Pedderson's impression that Coleman was suffering from "chronic schizophrenic undifferentiated type." He said, however, the condition was "In remission." *Id.* at 175. Dr. Quijano said "In remission means that the person is basically functioning well. But that whoever is dealing with that person, you must be alert to the symptoms coming back without notice. It's like ulcers." *Id.* at 183.

In light of the state court post-conviction record considered as a whole, we cannot say the court's findings, quoted above, are "not fairly supported by the record." *Sumner v. Mata,* 449 U.S. at 551, 101 S.Ct. at 771; 28 U.S.C. § 2254(d); *see also Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983); *cf. Demosthenes v. Baal,* — U.S. —, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990). Therefore we must accept the finding that the evidence supports the report to the state court in 1979 that "petitioner was, in fact, able to assist counsel and competent to stand trial." App. A at 4.

## IV

■ Respondent contends that this third federal petition for habeas relief should be dismissed because petitioner has abused the writ of habeas corpus.[17] A federal court may dismiss a second or successive petition if "it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." 28 U.S.C. foll. § 2254, Rules Governing Section 2254 Proceedings, Rule 9(b); *accord* 28 U.S.C. § 2244(b); *see also Coleman II,* 869

F.2d at 1380–81. Abuse of the writ occurs if the petitioner either (1) intentionally and inexcusably withholds the new claim from an earlier petition, or (2) "otherwise abuse[s] the writ" because the proceeding's "only purpose is to vex, harass, or delay." 28 U.S.C. § 2244(b); *Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078–79, 10 L.Ed.2d 148 (1963). Once the state adequately raises the defense of abuse of the writ, the burden shifts to the petitioner to show that he has not abused the writ procedure. *See Coleman II,* 869 F.2d at 1381.

■ The federal district court concluded herein that although petitioner did not receive the Eastern State Hospital medical records until August, 1987, his prior "habeas counsel was aware of alleged competency problems with his client, but chose for strategy or other unknown reasons not to pursue those issues." Order Denying Petition for Writ of Habeas Corpus at 8 (E.D. Okla. July 11, 1990). The court believed that petitioner's failure to procure the medical records earlier was legally inexcusable and therefore that petitioner "abused the writ as to all issues." *Id.* at 9–10. Significantly, however, the court did not dismiss the petition on that basis. Instead, the court proceeded to address the merits of petitioner's claims "'in the interest of last minute justice.'" *Id.* at 12 (quoting *Bell v. Lynaugh,* 858 F.2d 978, 94 (5th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3262, 106 L.Ed.2d 607 (1989)); *see Sanders v. United States,* 373 U.S. at 15–18, 83 S.Ct. at 1077–79; *Kuhlmann v. Wilson,* 477 U.S. 436, 451, 106 S.Ct. 2616, 2625–26, 91 L.Ed.2d 364 (1986). Where the district court chooses to rule on the merits of a second or successive habeas corpus petition, rather than to dismiss the petition as an abuse of the writ, this court may also address the merits. *See, e.g., Slicker v. Wainwright,* 809 F.2d 768, 769 (11th Cir. 1987).

■ We are convinced that we should reach the merits of petitioner's claims

---

**17.** As noted earlier, the third federal habeas petition combined the constitutional claims as-

serted in both the third and fourth state court post-conviction proceedings.

based on the discovery in August 1987 of the Eastern State Hospital medical records. Petitioner has made a substantial showing that neither he nor his counsel learned of the existence of those records until August 2, 1987, and that they did not receive them until August 21, 1987. We disagree with the district court's hypothesis that because petitioner raised four issues relating to his competency in his second federal habeas petition, he necessarily had a sufficient factual basis for the claims now before us. *See* Order at 7. The issues raised in the second federal habeas proceeding are patently distinct from those now before us. We do not doubt that petitioner's earlier claims had "some factual basis," *id.*, but it does not follow that petitioner's new claims are "predicated upon grounds obviously well known to [petitioner] when [he] filed the preceding application." S.Rep. No. 1797, 89th Cong., 2d Sess. 2, *reprinted in* 1966 U.S.Code Cong. & Admin.News 3663, 3664.

Until petitioner's attorneys obtained the Eastern State Hospital records, they had no factual basis for claiming that information favorable to the accused had been wrongly withheld by the state hospital. Furthermore, petitioner's challenges to the procedural adequacy of his pretrial competency determination are predicated to a large extent on Dr. Garcia's failure to disclose to the trial judge any reference to the information contained in petitioner's medical records which might have cast doubt on Dr. Garcia's conclusion that petitioner was competent to stand trial. Thus, we are persuaded that petitioner "did not know of the specific ... factual grounds for [those] claim[s] when he filed his earlier petition." *Coleman II*, 869 F.2d at 1380.

Petitioner has further demonstrated that as soon as he and his counsel became aware of Eastern State Hospital's records, he pursued his claims diligently and in good faith in both state and federal court. Petitioner's brief in his second habeas appeal (filed on August 26, 1987) refers to the recent discovery of "new evidence" warranting relief. Before we heard oral argument in that appeal on October 2, 1987, petitioner's counsel filed a motion on September 23, 1987, seeking remand of the pending case to the district court so that his habeas petition could be amended and the newly discovered claims considered in the pending habeas proceeding. Counsel also requested that the federal proceedings be held in abeyance until petitioner exhausted his state remedies. There is no evidence in the record that suggests that petitioner is pursuing needless piecemeal litigation or that he has raised the claims only to vex, harass, or delay.

We do decline, however, to reach petitioner's ineffective assistance of counsel claim. As the district court correctly noted, this is the second time Coleman has argued that he was denied effective assistance of counsel at both the guilt and sentencing stages of his trial. *See* Order at 11, 12. We carefully reviewed this claim in *Coleman I*, 802 F.2d at 1236, and again *sua sponte* in *Coleman II*, 869 F.2d at 1394. Petitioner nevertheless argues that his ineffective assistance of counsel claim should not be dismissed because it alleges new or different grounds from those previously determined on the merits, and neither petitioner nor his counsel knew of the factual basis for the claim when he filed his earlier petitions. We do not agree.

Although petitioner predicates his claim of ineffective assistance of counsel on the 1987 discovery of the Eastern State Hospital records, the substance of the claim is that petitioner's trial counsel failed to conduct a reasonable investigation of petitioner's background. We carefully considered and rejected a similar claim in *Coleman I*. *See* 802 F.2d at 1233–36. Thus, although the Eastern State Hospital medical records which have subsequently come to light add a new dimension to petitioner's claim, they do not sufficiently change its essential features. We therefore are not required to reconsider the claim on the merits. *Sanders*, 373 U.S. at 15, 83 S.Ct. at 1077. Thus, like the district court, we decline to review petitioner's ineffective assistance of counsel claim.

V

Finally, petitioner argues that the federal district court erred when it denied his

motion for an evidentiary hearing on the following issues: (1) the adequacy of petitioner's pretrial competency evaluation and determination; (2) the *Brady* claim; and (3) abuse of the writ. The last point is moot because we do not hold that petitioner's claims based on the newly discovered evidence constitute abuse of the writ.[18]

A habeas petitioner is entitled to a hearing in federal court on disputed issues of fact raised in the petition "if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); *see* 28 U.S.C. § 2254(d). Our holding above that the presumption of correctness applies to the written findings of fact by the state court in petitioner's third application for state post-conviction relief necessarily presupposes that the state court resolved the material issues of fact after a hearing on the merits, and the fact-finding procedure employed by the state court was adequate to afford a full and fair hearing. *See* 28 U.S.C. § 2254(d). Therefore, petitioner is not entitled to an evidentiary hearing in federal court on the question of his "competency in fact" in 1979. *Cf. Edwards v. State of Oklahoma*, 577 F.2d 1119, 1121 (10th Cir.1978).

In connection with petitioner's claim of error by the federal court's denial of an evidentiary hearing, we note that our rulings that a *Pate v. Robinson* hearing was not required by the facts before the state court, and that the medical records did not amount to "material" evidence under the *Bagley* and *Ritchie* tests, were both legal rulings, not calling for any evidentiary hearing.

Finally, we agree with the state district court's conclusion in its order denying petitioner's fourth application for post-conviction relief that "the evidence offered, which might, in its best light, raise a question as to the competence of Dr. Garcia, is irrele-

vant when considered in view of the fact that petitioner's competence was established and remains established by sufficient evidence outside and beyond the conclusion reached by Dr. Garcia." App. B at 2. We reach that conclusion as a matter of law, assuming, *arguendo*, that petitioner's factual allegations concerning Dr. Garcia's competence are true. Therefore, because there are no contested factual issues to be resolved, the federal court was not required to conduct an evidentiary hearing on that question.

## VI

### CONCLUSION

Accordingly, the motion for issuance of a certificate of probable cause is GRANTED. For the reasons stated, the judgment of the district court denying the petition for a writ of habeas corpus is AFFIRMED.

On consideration of the motion for a stay of execution, the brief in support thereof, and the response, we are not persuaded that there is a reasonable probability that four members of the Supreme Court would consider the underlying issues sufficiently meritorious for a grant of certiorari, or that there is a significant possibility of reversal of this decision. *See Barefoot v. Estelle*, 463 U.S. 880, 895, 103 S.Ct. 3383, 3395–96, 77 L.Ed.2d 1090 (1983). Therefore, the motion for a stay of the petitioner's execution is DENIED. In order that disposition by this court may be concluded expeditiously, it is further ORDERED that any petition for rehearing or petition for rehearing with suggestion for rehearing en banc be filed with the Clerk of this Court by 10:00 o'clock a.m. on September 4, 1990.

IT IS SO ORDERED.

TACHA, Circuit Judge, concurring.

I agree fully with the majority, but I write separately for the limited purpose of making clear I do not agree with any possible inference that the hospital notations

---

**18.** Although we do hold that petitioner's ineffective assistance of counsel claim is an improper successive petition, we do so as a matter of law on the assumption that the factual allegations

upon which that claim is based are true. Because there are no contested issues of material fact, an evidentiary hearing is unnecessary.

and reports the defendant seeks in this case are subject to disclosure under the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The *Brady* rule applies to exculpatory and impeachment information known to and subject to the control of the prosecution, and without which the defendant would be deprived of a fair trial. In this case the prosecution, as well as the defense, was unaware of the additional hospital records at the time of the trial so neither side relied on this additional information in preparing for trial or in cross-examining witnesses. Further, there is no indication in the record that Eastern State Hospital would have refused to turn its records and reports over to both sides if such information had been requested. Clearly, as we have found, additional psychological records were not considered material to the conduct of the trial at the time so no request was made. The requirements of *Brady* simply are not implicated in this case because the prosecution had no actual or imputed knowledge of, and took no part in withholding, exculpatory or impeachment evidence.

*Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1986), presents an entirely different question. In that case, both the prosecution and the defense were aware of the subpoenaed records, which if made available would have been equally available to both sides. The question the Court confronted there was whether the asserted privilege could block disclosure of information that might have been material to the defendant's due process right to be tried fairly. The Supreme Court did not decide in that case whether the *Brady* rule did or did not apply but rather that the assertion of the privilege by the protective service agency could not stand as an absolute bar to disclosure of material that might be subject to the *Brady* rule. Further, the Court did not decide that the protective service agency was an arm of the prosecution for *Brady* purposes.

I agree with the majority that because of the underlying due process concerns, the question whether the information is subject to the *Brady* rule and the question whether the information was material are so closely intertwined that it is difficult to determine which should be answered first. I would hold, however, that the newly-discovered hospital records in this case were not *Brady* material because they were not known to the prosecution nor were they subject to the control of the prosecution and no request was made for them. These factors are touchstones to invoking the *Brady* requirements.

## APPENDIX A

In the Court of Criminal Appeals of the State of Oklahoma

Charles Troy Coleman, Petitioner,

v.

State of Oklahoma, Respondent.

## ORDER AFFIRMING DENIAL OF POST–CONVICTION RELIEF

On August 15, 1988, Charles Troy Coleman filed his appeal from denial of post-conviction relief in Muskogee County District Court, Case No. CRF–79–76.

Appellant was found guilty of First Degree Murder and was sentenced to suffer the death penalty. That conviction was appealed to this Court and was affirmed July 11, 1983. *See Coleman v. State,* 668 P.2d 1126 (Okl.Cr.1983). Petition for Certiorari was filed with the United States Supreme Court, which was denied January 16, 1984. *See Coleman v. Oklahoma,* 464 U.S. 1073, 104 S.Ct. 986, 79 L.Ed.2d 222 (1984). Post Conviction Application was filed in Muskogee County District Court February 6, 1984, which was denied May 24, 1984. The appeal was lodged in this Court, and denial of relief was affirmed on November 30, 1984. *See Coleman v. State,* 693 P.2d 4 (Okl.Cr.1984).

January 16, 1985, Coleman filed for a writ of habeas corpus in the United States District Court for the Eastern District of Oklahoma. January 18, 1985, the District Court denied the writ of habeas corpus. An appeal was lodged with the United States Court of Appeals, Tenth Circuit.

September 30, 1986, the appeal was denied. *See Coleman v. Brown*, 802 F.2d 1227 (10th Cir.1986). A second petition for Writ of Certiorari was filed with the United States Supreme Court in Case No. 86–6750. The petition was denied June 1, 1987. Rehearing was denied June 26, 1987.

July 6, 1987, Coleman filed a second application for post-conviction relief in the Muskogee County District Court, which was denied on July 9, 1987. This Court affirmed that denial on July 15, 1987, in Case No. H–79–508.

July 7, 1987, Coleman filed a petition for writ of habeas corpus in the United States District Court, Case No. 87–351–C. July 15, 1987, the petition was denied by the United States District Court for the Eastern District of Oklahoma. July 20, 1987, an appeal was lodged with the United States Court of Appeals, Tenth Circuit. July 20, 1987, the United States Court of Appeals entered a stay of execution in Coleman's case. Subsequently, on March 6, 1989, the petition was denied in Case No. 87–2011.

October 15, 1987, Coleman filed a third application for post-conviction relief in the Muskogee County District Court. February 8, 1988, the District Court denied Coleman's post-conviction relief. From that denial, this appeal has been lodged.

The statement of facts concerned in Coleman's case may be found in *Coleman v. State*, 668 P.2d 1126 (Okl.Cr.1983).

In this appeal, Coleman argues two assignments of error in support thereof:

A. That Mr. Coleman was deprived of a constitutionally adequate determination of his competency to stand trial; and,

B. The State's failure to disclose the records of Eastern State Hospital's court ordered examination of Mr. Coleman's sanity deprived him a fair and adequate determination of his competency to stand trial and also deprived him of his right to a fair trial and an individualized sentencing determination in violation of the Eighth and Fourteenth Amendments.

Included in the records filed with this appeal are: the Original Record filed June 2, 1988; the Transcript of Testimony filed May 10, 1988, on the hearing held December 17 and 18, 1987, and January 22, 1988; a Supplement to Record on Appeal, consisting of the records admitted into evidence, filed August 25, 1988. Coleman's brief was filed August 15, 1988, and the State's brief was filed September 9, 1988.

On February 8, 1988, the Honorable Lyle Burris, District Judge for Muskogee County, Oklahoma, entered the following order denying post-conviction relief:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

NOW on this 8th day of February, 1988, being fully advised in the premises, this Court issues the following Findings of Fact and Conclusions of Law in the above styled cause:

### STATEMENT OF THE CASE

On October 19, 1987, Petitioner filed an Application for Post–Conviction Relief and various Motions accompanying said Application. The Application for Post–Conviction Relief alleged three specific claims:

1. That Petitioner was deprived of a fair and adequate proceeding for determining his ability to assist counsel and his competency to stand trial in violation of the due process clause of the Fourteenth Amendment.

2. That Petitioner was denied a fair trial with regard to a determination of his criminal responsibility in violation of the due process clause of the Fourteenth Amendment.

3. That Petitioner was denied his right to a full and fair determination of the appropriate sentence when the State misrepresented and withheld material evidence concerning his mental condition in violation of the Eighth and Fourteenth Amendments of the Constitution.

On November 24, 1987, following the State's Response to the said Application, this Court granted Petitioner's Motion for Counsel, granted Petitioner's Motion for

Expert Assistance, granted Petitioner's Motion to Produce, and granted Petitioner's Motion for Evidentiary Hearing, which Hearing was set for the 17th day of December, 1987. Hearing was held on the 17th and 18th days of December, 1987, with final arguments and briefs set and held on the 22nd of January, 1988, the petitioner appearing at all times by Mandy Welch, Deputy Appellate Public Defender, and the State appearing by W.A. Drew Edmondson, District Attorney.

During the hearings of December 17th and 18th, 1987, Petitioner's request to be personally present in court was taken and kept under advisement. On the 22nd of January, 1988, Petitioner's request to be present and testify was withdrawn, although Petitioner maintained his request to be present to assist counsel. At no time during the hearings did this court find that Petitioner's presence in court would be necessary for testimony or required for a presentation of the legal issues herein.

This court, in the process of this Application for Post-Conviction Relief and in previous court proceedings, has become thoroughly familiar with the records of the above styled cause. In reviewing this application, the court has reviewed all of the records of the case, has had available and reviewed where necessary the transcripts of all proceedings before the district courts of Muskogee County, has listened to and noted the testimony of witnesses for the petitioner and the state, both expert and lay, has reviewed on several occasions the records of Eastern State Hospital in their entirety as they pertain to petitioner, has listened to the arguments of counsel for both parties and reviewed the legal authority cited by each, as well as additional applicable case law and statutes. Based upon all of the above, this Court makes the following Findings of Fact and Conclusions of Law as to each of the Claims raised by Petitioner:

A. THAT PETITIONER WAS DEPRIVED OF A FAIR AND ADEQUATE PROCEEDING FOR DETERMINING HIS ABILITY TO ASSIST COUNSEL AND HIS COMPETENCY TO STAND TRIAL IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

### FINDINGS OF FACT

1. Petitioner was tried and convicted of murder in the first degree and sentenced to death in 1979, at which time the procedure for determination of competency was located at Title 22 O.S.A., sections 1171–1174. Those procedures provided for a period of observation and examination at a hospital within the Department of Mental Health, during which time criminal proceedings were suspended, and a report to the court by the Mental Health doctors as to the competence of the defendant.

2. Upon motion of defense counsel, petitioner was sent to Eastern State Hospital for such an evaluation prior to his preliminary hearing in the above styled cause. Approximately thirty (30) days later, the Court received a report from Dr. R.D. Garcia, Chief Forensic Psychiatrist, Eastern State Hospital, which stated that petitioner "does have sufficient ability to consult with an attorney and he does have a rational as well as actual understanding of the proceedings."

3. At no other time during the trial proceedings was petitioner's competency or sanity raised as an issue.

4. Petitioner's trial attorney, Mr. Don Pearson, testified under oath that his motion for commitment was primarily to obtain additional time and also to determine whether his client might have a mental problem; that at no time did he have reason to believe that his client was not competent. In fact, Mr. Pearson testified that in his opinion his client, petitioner herein, was competent, did understand the nature and consequences of the proceedings, and was able to assist him in his own defense.

5. That the records compiled by Eastern State Hospital during petitioner's period of observation, were not in the possession of the District Attorney or any agent of the District Attorney until 1987 and were, in 1979, equally available to the State or Defense by discovery motion or subpoena.

6. That the State, by and through the Office of District Attorney, including any member of the District Attorney's staff or any investigative agent or arm of said office, did not withhold or conceal any of the records of Eastern State Hospital from the petitioner at any stage of the proceedings against him.

7. That the records compiled by Eastern State Hospital together with the testimony of Dr. Walter Quijano, the psychologist who participated in the examinations and evaluation of petitioner in 1979, support the report tendered the Court by Dr. Garcia that petitioner was, in fact, able to assist counsel and competent to stand trial.

CONCLUSIONS OF LAW

1. That the procedures utilized for determining petitioner's competency and ability to assist counsel in 1979 did not, per se, violate the due process clause of the Fourteenth Amendment. *Colbert v. State*, 654 P.2d 624 (Okl.Cr.1982).

2. That the procedures utilized in 1979 for determining competency were known to petitioner and were available to be raised on direct appeal and thus are barred in an application for post-conviction relief. *Coleman v. State*, 693 P.2d 4 (Okl.Cr.1984).

3. That neither the procedure utilized nor the records which have subsequently come to light concerning the medical and psychological history of petitioner are sufficient to raise a reasonable doubt as to petitioner's competence in 1979. *Chaney v. Brown*, 730 F.2d 1334, 1340 (10th Cir. 1984).

Wherefore, premises considered, post-conviction relief as to petitioner's first claim should be and is hereby DENIED.

B. THAT PETITIONER WAS DENIED A FAIR TRIAL WITH REGARD TO A DETERMINATION OF HIS CRIMINAL RESPONSIBILITY IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

FINDINGS OF FACT

1. The court restates each of its findings of fact above.

2. That the petitioner gave a lengthy and detailed statement to District Attorney Investigator Gary Sturm immediately after his arrest in 1979 and, consistent with that statement, interposed the defense at trial that his whereabouts at the time of the murder was accounted for and any period of absence was insufficient for him to have accomplished the offense. This defense was inconsistent with and antagonistic to any defense based upon lack of criminal responsibility or lack of sanity.

3. Petitioner's trial attorney, Mr. Don Pearson, testified that, upon his review of the medical records in question, he would not have utilized them in the first (guilt) stage of the trial even if he had had them in 1979.

4. That the evidence of petitioner's guilt at trial was "overwhelming."

CONCLUSIONS OF LAW

1. That, with the evidence in question being equally available to the state and the defense at the time of trial, the failure of the defense to obtain the evidence is not a violation of the due process clause of the Fourteenth Amendment. *Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984).

2. That the evidence in question, had it been available to the defense at time of trial, would have been insufficient to create a reasonable doubt as to the guilt of the accused, his sanity or his criminal responsibility and, thus, is insufficient to warrant relief. *Chaney*, supra. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, *Castleberry v. State*, 590 P.2d 697 (Okl.Cr.1979).

Wherefore, premises considered, post-conviction relief as to petitioner's second claim should be and is hereby DENIED.

C. THAT PETITIONER WAS DENIED HIS RIGHT TO A FULL AND FAIR DETERMINATION OF THE APPROPRIATE SENTENCE WHEN THE STATE MISREPRESENTED AND WITHHELD MATERIAL EVIDENCE CONCERNING HIS MENTAL CONDITION IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION.

## FINDINGS OF FACT

1. The court restates each of its findings of fact above.

2. In the second (punishment) stage of the trial, the jury found the following aggravating circumstances beyond a reasonable doubt:

 a. The Defendant was previously convicted of a felony involving the use or threat of violence to the person.

 b. The Defendant knowingly created a great risk of death to more than one person.

 c. The murder was especially heinous, atrocious or cruel.

 d. The murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution.

 e. There exists a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society.

4. The jury unanimously recommended a death penalty.

5. That matters of social history contained within the records was equally available to the defense through the testimony of the defendant himself or members of the defendant's family.

6. That some matters relating to the petitioner's psychological history would have been of benefit to the state in the punishment stage had the records been in the possession of the parties at the time of trial.

## CONCLUSIONS OF LAW

1. That, with the evidence in question being equally available to the state and the defense at the time of trial, the failure of the defense to obtain the evidence is not a violation of the Eighth or Fourteenth Amendments. *Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984).

2. That the evidence in question, had it been available to the defense at time of trial, would have been insufficient to create a reasonable doubt as to any of the aggravating circumstances found by the jury and would have been insufficient to have affected the outcome of the punishment stage of the proceedings, beyond a reasonable doubt, and, as such, said evidence is insufficient to warrant relief. *Chaney*, supra. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342. *Castleberry v. State*, 590 P.2d 697 (Okl.Cr.1979).

Wherefore, premises considered, post-conviction relief as to petitioner's third claim should be and is hereby DENIED.

## CONCLUSION

This is petitioner's third application for post-conviction relief and his third evidentiary hearing in this Court. In addition, the record reflects that the petitioner has completed a direct appeal and has entered the federal courts twice on writs of habeas corpus. Issues raised by petitioner's counsel in briefs or oral argument, while not directly relating to the three claims for relief, have been considered. Additionally, the court has searched the medical records in question on any construction of the issues.

It is the Order of this Court that Post–Conviction Relief upon the issues raised in petitioner's Application and upon an and all issues raised by petitioner attendant to said Application, upon each such Claim, should be and is hereby DENIED.

/s/Lyle Burris
District Judge

NOW THEREFORE, after considering the records on file with this Court in the above-styled and numbered post-conviction appeal, and being fully advised in the premises, this Court finds that the Order of the District Court of Muskogee County in Case No. CRF–79–76, should be affirmed.

IT IS SO ORDERED.

CHARLES TROY COLEMAN is further advised that he has exhausted his State Remedies.

WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 6th day of April 1989.

/s/Tom Brett
TOM BRETT, PRESIDING JUDGE
/s/Ed Parks
ED PARKS, VICE PRESIDING JUDGE, Concur in Results.

/s/Hez J. Bussey
HEZ J. BUSSEY, JUDGE,
Concur in Results.
/s/James F. Lane
JAMES F. LANE, JUDGE
/s/Gary L. Lumpkin
GARY L. LUMPKIN, JUDGE
ATTEST:
/s/James Patterson
Clerk

## APPENDIX B

In the District Court for Muskogee
County, State of Oklahoma

Charles Troy Coleman, Petitioner,

-vs-

State of Oklahoma, Respondent.

No. CRF–79–76

Feb. 26, 1990.

### ORDER

Now on this 26th day of February, on petitioner's motion, the order of this court entered on February 5, 1990, is hereby vacated for the reason that petitioner did not receive timely notice thereof, and judgment is hereby entered on this date denying petitioner's application for post-conviction relief in accordance with the findings of the February 5, 1990 order, which findings are incorporated herein.

/s/Lyle Burris
JUDGE OF THE DISTRICT COURT

In the District Court in and for
Muskogee County, State of
Oklahoma

Charles Troy Coleman, Petitioner,

-vs-

State of Oklahoma, Respondent.

Case No. CRF–79–76

Feb. 5, 1990.

### ORDER

NOW on this 5th day of February, 1990, this Court having reviewed Petitioner's Application for Post–Conviction Relief, Motion for Approval of Reasonable Expenditure of Funds for Expert, Motion for Discovery and For Evidentiary Hearing, and Appendix to Application for Post–Conviction Relief; the State's Response to Application for Post–Conviction Relief; and the Petitioner's Reply to State's Response and Supplement to Application for Post–Conviction (Relief), and Supplemental Appendix to Application for Post–Conviction Relief, together with Petitioner's Second and Third Supplements to Application for Post–Conviction Relief; and, further, this Court being familiar with and having available for review the entire file of the case of State vs. Charles Troy Coleman, including the record and exhibits of Petitioner's last Application for Post–Conviction Relief, upon which this Court ruled on February 8th, 1988; and, further, this Court having reviewed the case law cited by both Petitioner and the State, including the pronouncements of various appellate courts in decisions involving Petitioner herein, it is the Finding and Order of this Court as follows:

1. That the issue of due process involved in the procedures for determination of competency utilized in the case of Petitioner has been raised and dealt with in prior post-conviction relief proceedings and thus is barred as a matter of law. *Coleman v. State*, 693 P.2d 4 (Okl.Cr.1984).

2. That the factual issue of the competence of Petitioner to stand trial in 1979 was raised and dealt with in prior post-conviction relief proceedings and thus is barred as a matter of law. Findings of Fact and Conclusions of Law, *Coleman v. State*, CRF–79–76, February 8, 1988; affirmed, *Coleman v. State*, PC–88–159, April 6, 1989.

3. That the issues now raised by Petitioner, if true, are insufficient to challenge the *due process* of the procedures utilized to determine the competence of Petitioner in 1979.

4. That the Petitioner offers no new evidence, much less any material evidence, as to the *competence* of *Petitioner* in 1979. The evidence offered, which might, in its best light, raise a question as to the competence of Dr. Garcia, is irrelevant when considered in view of the fact that Petitioner's competence was established and remains

established by sufficient evidence outside and beyond the conclusion reached by Dr. Garcia. This evidence includes the testimony under oath of Dr. Quijano, who also examined Petitioner in 1979, the sworn testimony of Don Pearson, who represented Petitioner in 1979, and the testimony of other individuals who dealt with Petitioner in and since 1979, as well as the entirety of the records of Eastern State Hospital compiled in 1979. No affidavit submitted by Petitioner raises any doubt as to his own competence at time of trial.

5. That this Court, while cognizant of the unanimous finding of the Court of Criminal Appeals in April, 1989, that: "CHARLES TROY COLEMAN is further advised that he has exhausted his State Remedies", thoroughly reviewed all pleadings and affidavits submitted by Petitioner and finds no issue or ground which would justify further hearing or delay in the due course of this case.

WHEREFORE, premises considered, Post–Conviction Relief on all grounds and issues raised by Petitioner herein shall be and is hereby DENIED; further, Petitioner's Motion for Approval of Reasonable Expenditure of Funds for Expert is DENIED since such funds have not been shown to be either reasonable or necessary in light of the rulings herein; further, Petitioner's Motion for Discovery and for Evidentiary Hearing is DENIED; and, further, that Petitioner's request for an additional thirty days to explore alternatives and to supplement the record is DENIED.

/s/Lyle Burris
JUDGE OF THE DISTRICT COURT

APPENDIX C

In the Court of Criminal Appeals of the State of Oklahoma

Charles Troy Coleman, Petitioner,

v.

State of Oklahoma, Respondent.

No. PC–90–326

ORDER AFFIRMING DENIAL OF POST–CONVICTION RELIEF

The petitioner has appealed to this Court from an order of the District Court of Muskogee County, denying his application for post-conviction relief in Case No. CRF–79–76.

This is petitioner's fourth application for post-conviction relief; therefore, he is barred from asserting any claims not raised in his first petition. (See 22 O.S. 1981, § 1086). The petitioner is further advised that he has EXHAUSTED his State remedies in Muskogee County Case No. CRF–79–76, and the clerk of this Court is directed NOT to accept any further petitions in said case for filing. The order of the District Court is AFFIRMED.

IT IS SO ORDERED.

WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 11th day of April, 1990.

/s/James F. Lane
JAMES F. LANE, VICE PRESIDING JUDGE

/s/Tom Brett
TOM BRETT, JUDGE

/s/Gary L. Lumpkin
GARY L. LUMPKIN, JUDGE

/s/Charles A. Johnson
CHARLES A. JOHNSON, JUDGE

ATTEST:

/s/James Patterson

Clerk